**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

**THOMAS C. ALLEN**
Fort Wayne, Indiana

**ROBERTA RENBARGER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**ALISA RUDE**
Indiana Department of Child Services
Fort Wayne, Indiana

FILED
Jul 26 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.H. and T.G., | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1112-JT-556 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate
Cause No. 02D08-1106-JT-94, 02D08-1106-JT-95 and 02D08-1108-JT-111

**July 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

J.H. ("Father") and T.G. ("Mother") (collectively "Parents") appeal the trial court's termination of their parental rights to their children E.H., M.H., and A.H. Parents present the following two issues for our review:

1. Whether they were denied their right to due process when the trial court admitted into evidence Exhibit 16 at the termination hearing regarding E.H. and M.H.

2. Whether the trial court lacked personal jurisdiction over Parents for lack of proper service in the matter regarding A.H.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Parents, who have never married, have three children together: E.H., born February 3, 2009; M.H., born November 17, 2009; and A.H., born October 3, 2010. After M.H. was born, a meconium test was positive for marijuana, and Parents' behavior while at the hospital raised "some concerns" from hospital staff. Transcript E.H.[1] at 20. In addition, the Indiana Department of Child Services ("DCS") received information "regarding neglectful home conditions" for E.H. Id. Accordingly, DCS removed both children from Parents' care and filed a petition alleging that both children were children in need of services ("CHINS"). At the time, Mother tested positive for and confirmed using marijuana before M.H. was born. Mother also tested positive for morphine, for which she did not have a prescription.

---

[1] There were two termination hearings in this case: one regarding E.H. and M.H. and the second regarding A.H. We will refer to the first transcript as "Transcript E.H." and the second transcript as "Transcript A.H."

2

During subsequent hearings on the matter, Parents admitted to the allegations of the CHINS petition,[2] and E.H. and M.H. were so adjudicated. At the dispositional hearing on January 29, 2010, the trial court issued parent participation plans. The trial court ordered Parents to: refrain from all criminal activity; maintain clean, safe and appropriate housing; notify DCS within forty-eight hours of all changes in household composition, housing, and employment; cooperate with all caseworkers, the Guardian Ad Litem ("GAL") and/or Court Appointed Special Advocate ("CASA"), by attending all case conferences as directed, maintaining contact, and accepting announced and unannounced home visits; immediately provide caseworkers with accurate information regarding paternity, finances, insurance, and family history; immediately provide caseworkers and mental health specialists with signed and current consents of release and exchange of information; provide the children with clean, appropriate clothing at all times; and fully cooperate with all rules of the children's placement. In addition, the trial court ordered Parents to: obtain a drug and alcohol assessment and follow all recommendations of the assessment; obtain suitable employment and/or seek assistance to reapply for social security disability income; take all medications as prescribed; provide appropriate caretakers for the children as directed; obtain psychiatric and psychological evaluations and follow the recommendations; submit to random urinalysis testing, drug screens, and/or oral swabs as required by DCS caseworkers and refrain from use of alcohol, illegal drugs, and other substance abuse; and attend and appropriately participate in all visits with the children as directed.

---

[2] DCS filed an amended petition and a second amended petition alleging the children to be CHINS. Parents admitted to the allegations contained in the second amended petition.

Parents met with DCS caseworker Molly Hall for an initial case conference on December 7, 2009, and they discussed the parent participation plans. Parents' psychological evaluations were scheduled for December 30, but when Hall showed up at their apartment to drive them to the appointment, they were not home, and they missed the appointments. The appointments were rescheduled five more times, but Parents failed to show at those appointments too. Finally, on February 8, 2011, Parents completed their psychological evaluations. Mother was diagnosed with bipolar disorder, post-traumatic stress disorder, marijuana abuse disorder, and borderline personality disorder. Father was diagnosed with bipolar disorder, generalized anxiety disorder, marijuana abuse disorder, and "personality traits of anti-social personality." Transcript E.H. at 27. Dr. David Lombard recommended that Mother undergo a psychiatric evaluation for psychotropic medication, cognitive behavior therapy, dialectical behavior therapy, substance abuse treatment, supervised visitation, and parent education. And Dr. Lombard recommended that Father also undergo a psychiatric evaluation for psychotropic medication, cognitive behavior therapy, substance abuse treatment, supervised visitation, and parent education. Mother did not comply with any of Dr. Lombard's recommendations. And while Father underwent a psychiatric evaluation, he attended only a single therapy session after that and otherwise was noncompliant. Further, other than the psychological assessments and sporadic visitation with the children, Parents failed to comply with most of the requirements under the parent participation plans.

In the meantime, Mother gave birth to A.H. on October 3, 2010. Because Parents did not have stable housing, and because E.H. and M.H. were already CHINS, DCS removed A.H. from Parents' care and filed a petition alleging A.H. to be a CHINS. The trial court issued parent participation plans for Father and Mother, but they did not comply with those plans as ordered.

On July 12, 2011, DCS filed a petition seeking the involuntary termination of Parents' parental rights to E.H. and M.H. An evidentiary hearing on the termination petition was held on August 2. Parents failed to appear at the hearing. DCS presented significant evidence concerning Parents' refusal to participate in the services recommended by Dr. Lombard, their inability to maintain stable employment or other sources of income, and general inability to care for the children. DCS caseworker Hall testified that Parents had lived in approximately seventeen different residences during the pendency of the case, mostly staying with friends in overcrowded apartments. DCS also presented evidence establishing that the children were happy and thriving in a foster home. At the conclusion of the hearing, the trial court issued its order terminating Parents' parental rights to E.H. and M.H.

Shortly thereafter,[3] DCS filed a petition to terminate Parents' parental rights to A.H. DCS attempted service on Parents by certified mail to their last known address, but that notice was unsuccessful. After making a diligent search for Parents' whereabouts, DCS attempted service by publication. And on September 1, the trial court appointed counsel for Parents and a CASA for A.H. Parents failed to appear at the termination

_____

[3] Neither party has included copies of the petitions to terminate parental rights in an appendix on appeal, and the CCS does not clarify the date that the petition pertaining to A.H. was filed.

5

hearing on October 11, and the trial court defaulted Parents. Parents also failed to appear at a second termination hearing on October 18, and, after hearing evidence, the trial court issued its order terminating Parents' parental rights to A.H. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We begin our review by acknowledging that when reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. In re D.D., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Here, in terminating Parents' parental rights, the trial court entered specific factual findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. L.S., 717 N.E.2d at 208.

6

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. K.S., 750 N.E.2d at 837. Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, the State is required to allege and prove, among other things:

(B) that one (1) of the following is true:

> (i)There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii)There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). The State's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" In re G.Y., 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2 (2008)). Moreover, Indiana Code

7

Section 31-35-2-8(b) provides that if a trial court does not find that the allegations in the termination petition are true, "the court shall dismiss the petition." Id. (emphasis added). Finally, Indiana's termination statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) by clear and convincing evidence before the trial court may terminate parental rights.

We observe that Parents do not challenge the sufficiency of the evidence to support any of the trial court's findings or allege that the findings do not support the conclusions.

**Issue One:  Due Process**

Parents first contend that the trial court denied them their right to due process when it considered as evidence State's Exhibit 16, which, they allege, was not admitted into evidence during the termination hearing regarding E.H. and M.H.  State's Exhibit 16 was the Second Amended Verified Petition Alleging Children to be in Need of Services. When the State sought to introduce that document as Exhibit 11 during the hearing, Parents' attorneys each objected on the basis that it was "inaccurate" in that it did not include handwritten modifications of parents' admissions and denials to the allegations therein.  Transcript E.H. at 10.  Accordingly, the State submitted another version of the Second Amended Verified Petition, which included the handwritten notations, as Exhibit 16 after the hearing had concluded.  Thus, on appeal, Parents "contend that the court's inclusion of Exhibit 16 into the record without the opportunity to view, object to its admission, or respond to the evidence violated their due process rights to have a fair trial." Brief of Appellants at 15.

Trial court error, even of constitutional dimension, does not necessarily require reversal of a conviction. Bush v. State, 775 N.E.2d 309, 311 (Ind. 2002). Rather, if the error is such that it would not affect the outcome of the trial, we deem it harmless. Id. This rule applies equally to the termination of parental rights as to a criminal conviction.

Here, we need not address whether the trial court violated Parents' due process rights on this issue because, even if there were error, it was clearly harmless. Parents assert that Exhibit 16, the second amended CHINS petition, was evidence used by the trial court to support its conclusion that the reason for the children's removal from the parents' care would not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). But the trial court also concluded that continuation of the parent-child relationships poses a threat to the well being of the children. See I.C. § 31-35-2-4(b)(2)(B)(ii). And Parents do not make any contention that the trial court relied on Exhibit 16 in making that conclusion. Because the statute is written in the disjunctive, again, DCS need only prove either subsection by clear and convincing evidence. Because Parents do not make a constitutional or sufficiency of the evidence challenge with regard to subsection (B)(ii), the trial court's termination order is adequately supported by that and its other findings and conclusions that are not challenged by Parents on appeal.

**Issue Two: Personal Jurisdiction**

Parents next contend that the trial court did not have personal jurisdiction over them in the termination proceeding as to A.H. In particular, they maintain that there "was never service of a proper summons" on each of them. Brief of Appellants at 16. We cannot agree.

9

In <u>D.L.D. v. L.D.</u>, 911 N.E.2d 675, 679 (Ind. Ct. App. 2009), <u>trans. denied</u>, we set

out the applicable standard of review as follows:

> The existence of personal jurisdiction over a defendant is a question of law
> and a constitutional requirement to rendering a valid judgment[.] . . . Thus,
> we review a trial court's determination regarding personal jurisdiction de
> novo. Although we do not defer to the trial court's legal conclusion as to
> its existence, personal jurisdiction turns on facts; accordingly, findings of
> fact by the trial court are reviewed for clear error. Clear error exists where
> the record does not offer facts or inferences to support the trial court's
> findings or conclusions of law.
>
> The question as to whether process was sufficient to permit a trial
> court to exercise jurisdiction over a party involves two inquiries: whether
> there was compliance with the Indiana Trial Rules regarding service, and
> whether the attempts at service comported with the Due Process Clause of
> the Fourteenth Amendment. It is commonly understood that procedural
> due process includes notice and an opportunity to be heard.

(Citations omitted).

Here, because Parents had not maintained contact with their case manager at DCS,

as required under their parent participation plans, DCS could not locate Parents at the

time the termination petition was filed. DCS had, however, just a few weeks prior,

advised Parents that the petition would be filed and that they should stay in touch with

their caseworker. DCS attempted service of process on Parents at their last known

address, but it was unsuccessful. Accordingly, DCS attempted service by publication.

And in support of that service by publication, DCS submitted to the trial court an

Affidavit for Diligent Search, which stated as follows:

> 1. That affiant is the Allen County Office of the Department of Child
> Services case manager currently assigned to [Parents'] case.
> 2. Affiant's last contact with [Mother and Father] was at the Permanency
> Hearing on July 14, 2011.

10

3. [Mother]'s last known address as reported on the record at the Permanency Hearing on July 14, 2011[,] is 420 Bass Street, Fort Wayne, IN 46802.

4. Affiant sent notice via regular and certified mail and said notice did not return undeliverable.

5. [Father]'s last known address as reported on the record at the Permanency Hearing on July 14, 2011[,] is 420 Bass Street, Fort Wayne, IN 46802.

6. Affiant sent notice via regular and certified mail and said notice did not return undeliverable.

7. [Father] and [Mother] were notified on the record at the Permanency Hearing on July 14, 2011 that the Department would be filing for Involuntary Termination of Parental Rights and that they should remain available.

8. Affiant has attempted to reach [Mother] and [Father] by last known phone number, but the number is no longer in service.

9. Affiant researched the Department of Correction records and did not locate [Mother] or [Father] incarcerated in any State facility.

10. Affiant was unable to locate [Mother] and [Father] at the Allen County Jail.

11. Affiant was able to obtain information via Facebook, which stated that [Father] had left with J & J. Affiant understands that this means J & J Entertainment's traveling carnival where [Mother] and [Father] worked from July to October 2010. Affiant also obtained a police report from July 2011 that stated [Father] informed law enforcement that he was leaving with the traveling carnival the following day.

Appellants' App. at 16-17.

Indiana Code Section 31-32-9-2 provides in relevant part that if, in an action to terminate a parent-child relationship, the parent cannot be served in accordance with Rule 4.1 of the Indiana Rules of Procedure, service <u>must</u> be made by publication. And Indiana Trial Rule 4.13 provides in relevant part:

In any action where notice by publication is permitted by these rules or by statute, service may be made by publication. Summons by publication may name all the persons to be served, and separate publications with respect to each party shall not be required. The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons <u>along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his</u>

whereabouts, or has left the state, and shall prepare the contents of the summons to be published. The summons shall be signed by the clerk of the court or the sheriff in such manner as to indicate that it is made by his authority.

(Emphasis added).

Here, Parents contend that "the search by DCS was not diligent or reasonably calculated to find them." Brief of Appellants at 19. In particular, Parents assert that, despite the "tidbit of information" regarding Parents' employment with J & J Entertainment, "DCS did nothing to follow up on it." Id. Parents maintain that DCS should have attempted to contact J & J Entertainment to determine the carnival's schedule, which would have facilitated "private process or other personal service" on Parents. Id. In addition, Parents contend that DCS should have sent a message to Parents via Facebook.

In D.L.D., a dissolution case, the father argued "that his service by publication did not comport with the requirements of Trial Rule 4.13(A) because Mother's affidavit was submitted after the publication and because she did not try to serve him at his last known employer's place of business." 911 N.E.2d at 679. But, in her affidavit,

> Mother averred that she had been unable to locate Father since their separation, she had gone to his last known residence and discovered that he had been evicted, she tried to locate Father at his best friend's house, she placed a telephone call to that friend and also attempted to contact Father's mother. Mother further averred that, during her deployment to Kosovo, A.D. had remained at the home of her maternal grandmother, without receiving any communication from Father. Finally, Mother averred that she had "made diligent efforts to locate [Father] both before and after the publication of summons."

(Citation omitted). We observed that the father had not "point[ed] to any requirement that service must be attempted at a party's place of employment prior to publication." Id.

12

at 680. And we held that "Father has not persuaded us that his service by publication failed to comport with Trial Rule 4.13(A)." Id. We further held that the mother had made an "adequate showing of due diligence, such that we can conclude that the trial court obtained personal jurisdiction over Father in a manner consistent with the Due Process Clause." Id.

We follow the sound reasoning in D.L.D. and hold that DCS was not required to attempt to contact Parents through their employer, J & J Enterprises. Further, to the extent that Parents contend DCS should have contacted them via Facebook, we cannot say that such was required given the multiple other ways DCS attempted to contact Parents. Moreover, Parents were under a court order to maintain contact with DCS and advise DCS of their whereabouts and willfully failed to comply. The DCS caseworker's affidavit of due diligence is sufficient to show compliance with Trial Rule 4.13 and comports with Due Process requirements. Parents cannot show that the trial court lacked personal jurisdiction over them for purposes of the termination of their rights to A.H.

Affirmed.

RILEY, J., and BAILEY, J., concur.